UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

№ 2:15-CV-6684 (JFB)

---

JAVIER HERNANDEZ,

Petitioner,

VERSUS

DONALD UHLER, SUPERINTENDENT,

Respondent.

---

MEMORANDUM AND ORDER
August 25, 2017

---

JOSEPH F. BIANCO, District Judge:

On November 8, 2015, Javier Hernandez (hereinafter "petitioner" or "Hernandez") petitioned this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in New York State Court. On May 12, 2008, following a jury trial, petitioner was convicted of two counts of Criminal Sexual Act in the First Degree (N.Y. Penal Law ("NYPL") § 130.50); one count of Attempted Rape in the First Degree (NYPL § 130.35); one count of Sexual Abuse in the First Degree (NYPL § 130.65); and one count of Endangering the Welfare of a Child in the First Degree (NYPL § 260.10). (T.[1] 4/8/08 at 24-25.) Petitioner was sentenced in the aggregate to a determinate period of incarceration of twenty-two years followed by five years of post-release supervision. (S.[2] 18.)

---

[1] "T." refers to the trial transcript. (*See* ECF No. 10.)

[2] "S." refers to the sentencing transcript.

1

Petitioner argues that he received ineffective assistance of trial counsel because his attorney failed to: (1) call petitioner's roommate as an alibi witness; (2) make a pretrial motion to dismiss the indictment or to suppress petitioner's incriminating statements; (3) hire an expert to refute the prosecutor's witness on Child Sexual Abuse Syndrome; (4) attack the credibility of prosecution witnesses; (5) object to alleged bolstering and hearsay testimony; and (6) object to prosecutorial misconduct. As set forth below, the Court denies the petition in its entirety.

I. BACKGROUND

A. Facts

The following facts are adduced from the petition, respondent's answer, and the underlying record.

During the summer of 2006, EO, the victim, lived with her grandparents, Fred and Olga Ortiz, in their house along with her mother, Ana, and two brothers, David and Daniel. (T. 3/31/08 at 16-17.) Petitioner also lived in the house, sharing the basement with Cecil Ortiz ("Cecil"), EO's uncle. (*Id.* at 17-18, 44.) The three children slept in a bedroom on the second floor. (*Id*. at 27.)

Around 11:00 p.m. on August 15, 2006, petitioner entered the children's upstairs bedroom, calling EO by name. (*Id.* at 36-37.) At that time, EO was sleeping next to her brother David on the top level of her bunk bed. (*Id.* at 37.) Hernandez grabbed EO by the arm, took her down to the basement, and sexually assaulted her, though no vaginal penetration occurred. (*Id.* at 39-40, 47-52.) EO managed to kick Hernandez and run upstairs. (*Id.* at 51-52.) EO encountered David on the stairs, but told him not to say anything about the incident because she feared for the health of her pregnant mother, Ana. (*Id.* at 54-55.) The following day, Hernandez gave EO $80 and told her not to discuss what happened. (*Id.* at 58.)

On October 23, 2006, after Ana had given birth, EO informed her mother about the incident. (*Id.* at 61, 193-94.) After that conversation, Ana confronted petitioner, who denied any wrongdoing. (*Id.* at 196.) She then took EO to Dr. Sara Schwartz, a gynecologist, for an examination, but EO did not describe the incident in detail to Dr. Schwartz. (*Id.* at 61-62, 203.) During the physical examination of EO, Dr. Schwartz found no indication of trauma or sexual assault. (*Id.* at 203.)

Two weeks later, EO described the incident to her mother in more detail. (*Id.* at 64, 204.) Afterward, Ana informed EO's father in Florida. (*Id.* at 205.) He then contacted a relative in New York who requested to speak to EO at her school. (T. 3/28/08 at 113-14.) The school denied him access to EO, but a counselor spoke with her after hearing from the relative. (*Id.* at 113-17; T. 3/31/08 at 65-67.) Shortly thereafter, the counselor contacted Ana, who came to the school, and the two of them accompanied EO to the police station. (T. 3/28/08 at 114-17; 3/31/08 at 65-67, 206-07.) EO gave a statement to a detective about the sexual assault. (T. 3/31/08 at 67; 3/27/08 at 106-07.) EO initially stated that the assault occurred in July or August before narrowing the date down to a few days before EO went to Florida, which put the assault around August 15, 2006. (T. 3/27/08 at 113-14.) Later, Ana returned to the police station with David, who gave a statement to the same detective. (T. 3/28/08 at 19.) Fred Ortiz, EO's grandfather and the homeowner, called petitioner and told him not to return to the house. (T. 3/31/08 at 210-112; T. 4/1/08 at 135.) Petitioner later agreed to meet the

2

detective at the police station, but the police were unable to locate him and believed that he left the state. (T. 3/27/08 at 117-19; 3/28/08 at 13-15; 3/31/08 at 216.)

A second examination of EO occurred at the Children's Advocacy Center in Central Islip, New York. (T. 3/28/08 at 16; 3/31/08 at 68-69, 213.) The examination was conducted by Marie Marino, a pediatric nurse practitioner and forensic medical examiner. (T. 4/2/08 at 47-48.) Based upon a review of police documents, Marino ascertained that EO did not have prior trauma or infection to the anal or genital area and had not suffered from chronic constipation. (*Id.* at 72, 77.) Since EO did not have a history of chronic constipation, Marino opined that the anal scarring she observed during the examination was the result of penetrating blunt force trauma. (*Id.* at 155-57.) This injury was consistent with the position EO claimed she was in when the sexual assault occurred. (*Id.* at 158-59.)

On April 19, 2007, petitioner was located in New Orleans and returned to New York. (T. 3/28/08 at 26-28.) He was arrested and brought to the Riverhead Jail in New York, where he twice called Fred Ortiz and asked for forgiveness. (T. 4/1/08 at 135-36.)

On May 12, 2008, the jury found petitioner guilty of two counts of Criminal Sexual Act in the First Degree (NYPL § 130.50), one count of Attempted Rape in the First Degree (NYPL § 130.35), one count of Sexual Abuse in First Degree (NYPL § 130.65), and one count of Endangering the Welfare of a Child in the First Degree (NYPL § 260.10). (T. 4/8/08 at 24-25.) He was sentenced in the aggregate to twenty-two years' imprisonment followed by five years of post-release supervision. (S. 18.)

B. Procedural History

1. State Court Proceedings

Petitioner appealed his conviction to the Supreme Court, Appellate Division, Second Department, arguing that: (1) there was insufficient evidence to support his conviction; (2) the verdict was against the weight of the evidence; and (3) his sentence was vindictive and excessive. (Pet., ECF No. 1, at 1.) On October 18, 2011, the Appellate Division affirmed the conviction. *People v. Hernandez*, 88 A.D.3d 907 (N.Y. App. Div. 2011) ("*Hernandez I*"). It first held that petitioner's argument about the sufficiency of the evidence was unpreserved, but, in any event, the evidence was legally sufficient to establish guilt beyond a reasonable doubt. *Id.* at 907. The court further concluded that the verdict was not against the weight of the evidence and that the sentence was neither vindictive nor excessive. *Id.* Petitioner applied for leave to appeal to the New York State Court of Appeals, which was denied on December 16, 2011. *See People v. Hernandez*, 18 N.Y.3d 959 (2011).

Petitioner then brought a motion to vacate his conviction pursuant to CPL § 440.10. (Pet. 1.) He argued that defense counsel was ineffective because he failed to (1) call his roommate as an alibi witness, (2) move to suppress appellant's statements to Fred Ortiz, (3) properly attack the credibility of prosecution witnesses or object to alleged prosecutorial misconduct and certain testimony, and (4) hire an expert witness to rebut the People's expert on Child Sexual Abuse Syndrome. (*Id.* at 1-2.)

The County Court denied the motion. (*Id.* at 2.) The court determined that there was sufficient evidence presented that petitioner's roommate was out of town on the night of the

3

assault so that counsel's failure to call him as an exculpatory witness could not amount to ineffective assistance of counsel. (Resp.'s Ans., ECF No. 9, at 3.) The court further found that it was procedurally barred from reviewing the remaining claims because the issues were record-based and inappropriate for collateral review. (*Id.*)

On appeal, the Appellate Division remanded to the County Court the petitioner's ineffective assistance of counsel argument based on counsel's failure to consult or hire an expert witness on Child Sexual Abuse Syndrome. *See People v. Hernandez*, 125 A.D. 3d 885, 887 (N.Y. App. Div. 2015) (*Hernandez II*). Specifically, the court held that

> the defendant's contention that his trial counsel was ineffective in failing to consult or hire an expert witness on the issue of child sexual abuse syndrome, so as to refute the testimony of the People at trial, was of the type that properly may be raised in the context of a motion pursuant to CPL 440.10. Accordingly, that part of the defendant's motion was not procedurally barred by CPL 440.10(2)(c).

*Id.* The Appellate Division affirmed the remainder of the County Court's decision. *Id.* The Court of Appeals denied leave to appeal. *People v. Hernandez*, 26 N.Y.3d 968 (2015).

Reviewing the claim based on defense counsel's failure to consult with an expert, the County Court determined that counsel was not ineffective. In particular, it found that petitioner failed to "demonstrate his initial burden" because he did not demonstrate that an expert could rebut the assertions of the prosecution expert or that he was prejudiced by the absence of such testimony. (*People v. Hernandez*, __Misc. 3d__, Ind. No. 940/2007 (County Ct. Suffolk County September 15, 2015) (Kahn, J.) (*Hernandez III*).) The court noted that the prosecution's expert offered only "a general explanation of the possible behaviors exhibited by the child victim and did not offer an impermissible opinion on the issue of whether [petitioner] committed the sex crimes charged in the indictment." *Id.* The court also noted that "[d]efense counsel cross examined the witness, called into question her testimony, and called his own medical expert to rebut the allegations of the child victim and the People's expert." *Id.* Petitioner did not seek leave to appeal that decision to the Appellate Division.

2. The Instant Petition

On November 8, 2015, pursuant to 28 U.S.C. § 2254, petitioner filed a *pro se* Petition for a Writ of Habeas Corpus with this Court, arguing that he received ineffective assistance of counsel at the trial level. (ECF No. 1.) Respondent filed an answer and memorandum of law in opposition to the petition on March 1, 2016. (ECF No. 9.) The Court has fully considered the submissions and arguments of the parties.

II. STANDARD OF REVIEW

To determine whether a petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with

4

respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was contrary to, or involved an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2554. "'Clearly established Federal law' means 'the holdings, as opposed to dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by the [Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principles from [the Supreme Court's] decisions but unreasonably applies that the principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decisions applied clearly established federal law erroneously or incorrectly. Rather, that application must be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed feelings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F. 3d 200, 203 (2d Cir. 2006)).

III. DISCUSSION

Petitioner argues that he was denied effective assistance of counsel because his attorney failed to: (1) call petitioner's roommate, Cecil, as an alibi witness; (2) make a pretrial motion to suppress petitioner's statements to Fred Ortiz; (3) hire an expert to refute the prosecutor's witness on Child Sexual Abuse Syndrome; (4) attack the credibility of prosecution witnesses; (5) object to alleged bolstering and hearsay testimony; and (6) object to prosecutorial misconduct. The Court concludes that all but one of these claims are procedurally barred and, in any event, they all lack merit. Therefore, petitioner is not entitled to habeas relief.

5

A. Procedural Bar

1. Exhaustion

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), he still must fairly present his federal constitutional claims to the highest state court having jurisdiction over them, *see Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 n.3 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)) (alteration in original).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claims in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365-66. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition." *Daye*, 696 F.2d at 191-92 (citing *Picard*, 404 U.S. at 276; *United States ex rel. Cleveland v. Casscles*, 479 F.2d 15, 19-20 (2d Cir. 1973)). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Id.* at 192 (footnote omitted).

2. Procedural Default

Like the failure to exhaust a claim, the failure to satisfy the state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman*, 501 U.S. at 735) (emphasis omitted). Where the petitioner "can no longer obtain state-court review of his present claims on account of his procedural default, those claims are now to be deemed exhausted." *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004) (citing *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)). Therefore, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court

6

would hold the claim procedurally barred.'" *Keane*, 118 F.3d at 139 (quoting *Hoke*, 933 F.2d at 120).

However, "exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted [on] those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceedings." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Coleman*, 501 U.S. at 744-51).

The procedural bar rule in the review of applications for writs of habeas corpus is based on the comity and respect that state judgments must be accorded. *See House v. Bell*, 547 U.S. 518, 536 (2006). Petitioner's federal claims also may be procedurally barred from habeas corpus review if they were decided at the state level on adequate and independent grounds. *See Coleman*, 501 U.S. at 729-33.

Once it is determined that a claim is procedurally barred under state rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Id.* at 750 (citations omitted). A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

3. Application

Here, on direct appeal, petitioner did not raise his record-based claims that counsel was ineffective for failing to file a pretrial motion to suppress his statements to Fred Ortiz, challenge prosecution witnesses on cross examination, or object to hearsay and alleged prosecutorial misconduct. Moreover, as the County Court here concluded (*see* Resp.'s Ans. at 3), petitioner is procedurally barred from raising them in state court in a collateral proceeding, *see* CPL § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when . . . [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's . . . unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him."). Therefore, he has procedurally defaulted on these claims. *See Finley v. Graham*, No. 12CV9055KMKPED, 2016 WL 47333, at *9 n.14 (S.D.N.Y. Jan. 4, 2016) ("[T]he Second Circuit has routinely held § 440.10(2)(c) to be an adequate and independent state ground that precludes federal habeas review." (collecting cases)). Likewise, petitioner's claim that his lawyer was ineffective for failing to consult or hire an expert on Child Sexual Abuse Syndrome is procedurally barred because he never sought appellate review of *Hernandez III*, and the time for him to seek leave to appeal has long since expired. *See Edsall v. Marshall*, No. 08-CV-0673 MAT, 2010 WL 4140715, at *5 & n.3 (W.D.N.Y. Oct. 21, 2010).

Petitioner has offered no explanation for why he failed to properly raise these claims in state court, nor has he made a showing of prejudice or manifest injustice. *See Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 496. Therefore, all of his claims except his

7

claim relating to the alibi witness are procedurally barred.[3]

### B. Merits

For the reasons that follow, the Court denies the entire petition on the merits.

### 1. Applicable Law

Under the standard promulgated by *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.

In order to meet the first prong of the *Strickland* test, "a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' determined according to 'prevailing professional norms' . . . . Counsel's performance is examined from counsel's perspective at the time of and under the circumstances of trial." *Murden v. Artuz,* 497 F.3d 178, 198 (2d Cir. 2007) (quoting *Strickland*, 466 U.S. at 688); see also *Davis*, 428 F.3d at 88 ("When assessing whether or not counsel's performance 'fell below an objective standard of reasonableness' . . . under prevailing professional norms,' *Strickland* directs us to consider the circumstances counsel faced at the time of the relevant conduct and to evaluate the conduct from counsel's point of view.") (quoting *Strickland*, 466 U.S. at 688-89). Therefore, "'[j]udicial scrutiny of a counsel's performance must be highly deferential . . . [and] every effort [must] be made to eliminate the distorting effects of hindsight.'" *Cox*, 387 F.3d at 198 (quoting *Strickland*, 466 U.S. at 689); see also *Eze*, 321 F.3d at 125 (explaining scrutiny is deferential because "'it is all too tempting for a defendant to second-guess counsel's assistance after a conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable'" (quoting *Strickland*, 466 U.S. at 689)).

In particular, "[a]ctions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance.'" *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) (quoting *Strickland*, 466 U.S. at 689); see also *Bell*, at 156 (explaining that in order to show ineffective assistance, "defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy") (citation omitted); *Lynn v. Bliden*, 443 F.3d 238, 247 (2d Cir. 2006) ("As a general rule, a habeas petitioner will be able to demonstrate that a trial counsel's decisions were objectively unreasonable only if there [was] no . . . tactical justification for the course taken.") (citation omitted). For that reason, "[s]trategic choices made by counsel after thorough investigation . . . are virtually unchallengeable . . . and there is a strong presumption that counsel's performance falls 'within the wide range of reasonable professional assistance.'" *Gersten*, 426 F.3d at 607 (quoting *Strickland*, 466 U.S. at 689-90); see also *Pavel v. Hollins*, 261 F.3d 210, 2l6 (2d

---

[3] Even assuming petitioner had properly exhausted these ineffective assistance of counsel claims, the Court concludes that they all lack substantive merit for the reasons set forth below.

Cir. 2001) (explaining that representation is deficient only if, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance") (emphasis in original) (citation omitted).

Finally, in determining whether one or more errors by trial counsel renders the representation constitutionally deficient under the first prong of *Strickland*, the Court "need not decide whether one or another or less than all of these . . . errors would suffice, because *Strickland* directs us to look at the 'totality of the evidence before the judge or jury,' keeping in mind that 'some errors [ ] have . . . a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture. . . .' " *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 695-96).

The second prong focuses on prejudice to the petitioner. The petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, "reasonable probability" means that the errors were of a magnitude such that they "undermine[ ] confidence in the [proceeding's] outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). " '[T]he question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.' " *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). The party alleging ineffective assistance of counsel bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

2. Failure to Call Alibi Witness

"Courts applying *Strickland* are especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury . . . . 'The decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess.' " *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005) (quoting *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998)); *see also Eze*, 321 F.3d at 129 ("A defense counsel's decision not to call a particular witness usually falls under the realm of trial strategy that we are reluctant to disturb."). In fact, depending on the circumstances, even an attorney's decision not to call witnesses "that might offer exculpatory evidence . . . is ordinarily not viewed as a lapse in professional representation." *Best*, 219 F.3d at 201.

With respect to alibi witnesses, courts have found that "even if . . . alibi evidence did exist, the trial attorney's decision not to call the purported alibi witnesses [may be] a reasonable tactical decision" that does not constitute deficient performance. *Dupont v. United States*, 224 F. App'x 80, 81 (2d Cir. 2007); *see also Perkins v. Comm'r of Corr. Servs.*, 218 F. App'x 24, 26 (2d Cir. 2007) (finding valid "strategic reasons" for failure to call alibi witnesses). "At the same time, however, the decision not to call a witness must be grounded in some strategy that advances the client's interests." *Eze*, 321 F.3d at 129. The Second Circuit has noted several legitimate, tactical reasons for failing to call a defense witness. For example, an attorney may choose not to call a witness where that witness' likely testimony is largely unknown to the attorney before trial, or where the witness is "unfriendly" to the defendant. *See e.g.*, *Greiner*, 417 F.3d at 323 (finding that

counsel was justified in deciding not to introduce evidence because it would have established a motive for the petitioner to have committed the crime); *see also, e.g.*, *Seow v. Artuz*, 98-CV-72, 2007 WL 2890259, at *10, 2007 U.S. Dist. LEXIS 72208, at *26-27 (E.D.N.Y. Sept. 27, 2007) (finding decision not to call witness "who was intoxicated and unsure of what he had seen" to be "a tactical choice").

In *Dupont*, for example, the petitioner argued that he was denied effective assistance of counsel because his attorney decided not to present an alibi defense. 224 F. App'x at 81. The Second Circuit, however, held that the defendant failed to establish the existence of alibi evidence and "absent such evidence, there [was] no basis for defendant's ineffective assistance claim." *Id.* at 82. Furthermore, the Court stated that even if alibi evidence did exist, the trial attorney's decision not to use the alibi witness does not constitute ineffective assistance of counsel "if the lawyer has a reasonable justification for the decision." *Id.* (quoting *Greiner*, 417 F.3d at 319).

Similarly, here, the underlying record demonstrates that defense counsel's decision not to call Cecil Ortiz was a "reasonable tactical decision" that does not constitute deficient performance. *Id.* at 81. In particular, the Court agrees with the County Court that the evidence at trial established that Cecil was not present on the night in question, and, therefore, that counsel had a valid strategic reason for refusing to call him. EO, Ana Ortiz, and Daniel Ortiz all testified that Cecil was not home the night of the assault (T. 3/31/08 at 44 (EO); 4/1/08 at 28-29, 175 (Ana and Daniel, respectively)), and Fred Ortiz testified that Cecil would go away to gamble (T. 4/1/08 at 123). Given this evidence, it was strategically reasonable for defense counsel not to call him to testify. *See Dupont*, 224 F. App'x. at 91 ("We find no clear error in the district court's factual finding that defendant failed credibly to establish the existence of alibi evidence at the time of trial. Absent such evidence, there is no basis for defendant's ineffective assistance claim.") Accordingly, the Court cannot conclude that defense counsel's behavior fell below an objective standard of reasonableness. *See id.*; *Strickland*, 466 U.S. at 694.[4] In any event, petitioner has not shown prejudice as a result of counsel's failure to call his roommate because he has not provided a statement from Cecil Ortiz that corroborates his alibi. *Compare Rogers v. Chappius*, No. 12-CV-00148

---

[4] Petitioner further argues that the County Court erred in deciding his § 440.10 motion without holding a hearing. (Pet. 9.) Under § 440.30(4), however, a court may deny a § 440.10 motion "without conducting a hearing" if, *inter alia*, "[t]he motion is based upon the existence . . . of facts and the moving papers do not contain sworn allegations substantiating . . . all the essential facts." Because petitioner did not provide any such sworn allegations from Cecil Ortiz to support his § 440.10 motion, the County Court's decision to proceed without a hearing complied with § 440.30(4). *See People v. Kirkland*, 1 Misc. 3d 904(A), 781 N.Y.S.2d 627 (Sup. Ct. 2003); *see also Parisi v. Artus*, No. 08-CV-1785 ENV, 2010 WL 4961746, at *9 (E.D.N.Y. Dec. 1, 2010) ("[T]he Suffolk County Court acted well within its authority in not holding an evidentiary hearing on [petitioner's] § 440 motion."). In any event, this argument only alleges a violation of state procedural law, which does not provide grounds for federal habeas relief. *See Polanco v. Rock*, No. 9:08-CV-1283 (GLS), 2010 WL 2483287, at *13 (N.D.N.Y. June 4, 2010) ("State prisoners have no federal constitutional right to post-conviction proceedings in state court. Therefore, to the extent that Petitioner is challenging alleged procedural errors by the trial court in deciding his section 440 motion, including his claim that the court denied the motion without holding a hearing, those claims are not cognizable on habeas review." (citations omitted) (collecting cases)).

MAT, 2013 WL 1825505, at *12 (W.D.N.Y. Apr. 30, 2013) (holding that petitioner failed to show prejudice from counsel's failure to investigate defense witnesses where he "did not establish in state court, nor [did] he [in federal court], the substance of the purported alibi testimony by way of affidavits" (collecting cases)) *with Schulz v. Marshall*, 528 F. Supp. 2d 77, 85, 101-02 (E.D.N.Y. 2007) (finding prejudice from failure to call alibi witness, among other deficiencies in counsel's performance, where petitioner presented a corroborative affidavit from that witness).

  3. Failure to File Pretrial Motions

Petitioner also argues that counsel was ineffective because he failed to move to dismiss the indictment based on insufficient evidence and failed to move to suppress petitioner's statements to Fred Ortiz. The Court concludes that these contentions lack merit.

First, petitioner argues that his attorney failed to file a motion dismiss the indictment for insufficiency of the evidence. (Pet. 6.) As a threshold matter, however, the record contradicts petitioner's assertion because it includes a short order from County Court Judge James Hudson dated June 19, 2007 in which the court denied counsel's motion "to dismiss the indictment on the grounds that the evidence before the Grand Jury was not legally sufficient to establish the offenses charged." (*See* Order dated June 19, 2007.) This order plainly indicates that petitioner's lawyer *did* file a motion to dismiss the indictment.

In addition, even had counsel failed to move to dismiss the indictment, the Court concludes that the motion would have lacked merit because the government provided sufficient evidence of guilt to support the indictment.[5] Specifically, it is undisputed that EO testified about the sexual assault petitioner committed against her before the Grand Jury. (*See* People's Ex. 22 at 9-10 (transcript of EO's grand jury testimony).) Given that "[t]he testimony of a single, uncorroborated eyewitness is generally sufficient to support *conviction*," *United States v. Danzey*, 594 F.2d 905, 916 (2d Cir. 1979) (emphasis added), EO's testimony about the alleged assault was plainly sufficient to support the indictment. *See also Bentley v. Scully*, 41 F.3d 818, 825 (2d Cir. 1994) (stating that eyewitness testimony and identification constituted a major portion of overwhelming evidence of guilt); *King v. Greiner*, 210 F. Supp. 2d 177, 185 (E.D.N.Y. 2002) (holding that a petitioner's claim of legally insufficient evidence lacked merit in light of eyewitness identification); *Huber v. Schriver*, 140 F. Supp. 2d 265, 277 (E.D.N.Y. 2001) (holding that the testimony of one eyewitness defeated a petitioner's claim of legally insufficient evidence). Moreover, the government presumably introduced the same evidence before the grand jury that they presented at trial to corroborate EO's testimony, including, *inter alia*, her brother's statement that petitioner took EO by the arm and offered to buy him a bike if he kept quiet about what he had seen (T. 4/1/08 at 199), nurse practitioner Marino's testimony about anal scarring indicative of penetrating blunt force trauma (T.

---

[5] It is "well-settled that claims based on the sufficiency of the evidence presented to a state Grand Jury are not cognizable under federal law and thus are not reviewable in a habeas corpus petition." *Walker v. Brown*, No. 08–CV1254, 2009 WL 2030618, at *7 (E.D.N.Y. July 10, 2009) (collecting cases). Nevertheless, a petitioner may allege ineffective assistance of counsel based on a failure to move to dismiss the indictment. *See, e.g.*, *Hernandez v. Kuhlmann*, 14 F. App'x 90, 92 (2d Cir. 2001).

11

4/2/08 at 155-57), and petitioner's pleas for forgiveness from Fred Ortiz (*id.* at 135-36). This evidence was plainly sufficient to sustain the indictment. *See, e.g.*, *Jones v. Poole*, No. 05-CV-6378, 2009 WL 3491298, at *5 (W.D.N.Y. Oct. 23, 2009); *Munoz v. Burge*, No. 02-CV-6198 NGG LB, 2007 WL 7244783, at *17 (E.D.N.Y. Aug. 27, 2007), *report and recommendation adopted as modified*, No. 02-CV-6198 NGG, 2010 WL 3394696 (E.D.N.Y. Aug. 20, 2010).

Additionally, the Court rejects petitioner's second argument that counsel was ineffective for failing to move to suppress petitioner's statements to Fred Ortiz over the phone asking for forgiveness. As a general matter, in order to show ineffective assistance of counsel for failure to file a pre-trial motion to suppress, the underlying motion must be meritorious, and there must be a reasonable probability that the court's ruling on it would have affected the outcome of the case. *See United States v. Matos*, 905 F.2d 30, 32 (2d Cir. 1990) (citing *Kimmelman v. Morrison*, 47 U.S. 365, 375-76 (1986)).

In this case, however, the pre-trial motions petitioner claims his attorney did not file would not have been meritorious. Even assuming counsel did not move to suppress the statements to Fred Ortiz,[6] the Court can find no legal basis for suppressing them. Petitioner has provided nothing to suggest that the statement was involuntary, as required to render a statement inadmissible under New York law. *See* N.Y. Crim. P. Law § 60.45(1); *People v. Grillo*, 176 A.D.2d 346, 346 (N.Y. App. Div. 1991); *Malave v. Smith*, 559 F. Supp. 2d 264, 268 (E.D.N.Y. 2008) ("Unlike the analogous federal constitutional protection—which bars only statements coerced by state actors, [N.Y. Crim. Proc. L.] § 60.45 does not distinguish between statements made to law enforcement and statements made to private citizens."). The Court can discern no other basis for which the statements might have been suppressed, and petitioner offers none. As such, it cannot conclude that counsel was constitutionally ineffective for failing to file a motion to suppress them. *See Matos*, 905 F.2d at 32 ("In order to show ineffective assistance for the failure to make a suppression motion, the underlying motion must be shown to be meritorious. . . ."); *Delgado v. Walker*, 798 F. Supp. 107, 111 (E.D.N.Y. 1992) (holding that counsel was not ineffective for failing to file a suppression motion that was unlikely to succeed).

In short, petitioner has not shown that his attorney's failure to file a motion to dismiss the indictment or to suppress the statements made to Fred Ortiz fell below an objective standard of reasonableness under the first prong of *Strickland*. Therefore, he is not entitled to habeas relief on this claim.

4. Failure to Call an Expert in Child Sexual Abuse Syndrome

Petitioner argues that trial counsel's failure to retain or consult an expert witness on Child Sexual Abuse Syndrome rendered him ineffective. (Pet. 6.) As noted above, however, "the tactical decision of whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation." *United States v. Schmidt*, 105 F.3d 82,

---

[6] The record includes an omnibus motion where counsel, *inter alia*, moves to "preclude[e] any statements alleged to have been made by the defendant and not noticed, pursuant to Section 710.30 of the New York Criminal Procedure Law," but it does not specifically mention the statements to Fred Ortiz.

12

90 (2d Cir. 1997); *see also Haynes v. Ercole*, No. 08-CV-3643 (JFB), 2011 WL 2341277, at *23 (E.D.N.Y. June 8, 2011) ("[F]ailing to call a witness, even one that could potentially provide exculpatory testimony, does not ordinarily lead to the conclusion that counsel was ineffective."); *Bloomfield v. Senkowski*, No. 02 CV 6738 (RJD) (LB), 2008 WL 2097423, at *1 (E.D.N.Y. May 15, 2008) ("[A]n attorney's failure to consult with or call [an] expert, standing alone, does not necessarily meet the first prong of *Strickland*.").

Here, petitioner's claim fails to meet the first prong of *Strickland.* Petitioner has provided no basis to conclude that his lawyer's actions were not a result of trial strategy. On the contrary, as the County Court found, a Child Sexual Abuse Syndrome expert retained by the defense would not have been able to effectively rebut the People's expert because the expert only gave a "general explanation of the possible behaviors exhibited by the child victim." (*See Hernandez III* at 2.) More significantly, defense counsel vigorously cross-examined the People's expert at trial and called his own medical expert to refute EO's allegations. Therefore, petitioner has not demonstrated that counsel's representation fell below an objective standard of reasonableness as required for his ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 694.[7]

5. Failure to Attack Credibility of Witnesses

Petitioner claims that he received ineffective assistance of counsel because his defense attorney failed to attack the credibility of witnesses. This Court disagrees.

As with other aspects of trial planning, "[d]ecisions about 'whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature' and generally will not support an ineffective assistance claim." *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002). "Counsel's conduct is only considered unreasonable where there is no plausible trial strategy justifying counsel's behavior." *Lewis v. United States*, No. 10-CV-00718 (ENV), 2012 WL 2394810, at *4 (E.D.N.Y. June 25, 2012) (citing *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998)).

Here, petitioner asserts that his lawyer "made no attempt to impeach [EO] at trial with her inconsistent statements regarding whether penile penetration occurred." (Pet. 7.) He has not, however, provided any basis from which this Court could conclude that EO made such statements. On the contrary, all of EO's statements admitted into evidence were consistent with her trial testimony that no vaginal penetration took place. (*Compare, e.g.*, T. 3/31/08 at 47-52 *with* People's Ex. 7 at 1-2 (EO's statement to police), People Ex. 22 at 9-10 (transcript of EO's grand jury testimony) *with* T. 3/31/08 at 47-52 (trial testimony).). Defense counsel did, however,

---

[7] Petitioner again argues that the County Court erred in denying his § 440.10 motion on this ground without a hearing, but, as with his claim regarding the alibi witness, he did not provide an affidavit from a counter-expert that would entitle him to such a hearing under § 430.30(4). *See Kirkland*, 1 Misc. 3d 904(A), 781 N.Y.S.2d 627. Furthermore, as noted above, this state procedural law claim is not cognizable on federal habeas review. *See Polanco*, 2010 WL 2483287, at *13.

13

question EO about other issues with her testimony, such as her initial statement to her mother that the assault occurred in July rather than August (T. 3/31/08 at 89-90), her early failure to provide the details of the assault to her mother or the gynecologist (*id.* at 88, 96-97, 105-12), her refusal to go into detail about the incident for some time (*id.* at 97, 104, 119-20), and various inconsistencies between her trial and Grand Jury testimony about the details of that night (*id.* at 130-41).

To the extent petitioner challenges his attorney's cross-examinations of the People's other witnesses, the Court concludes he has not shown deficient performance in that respect because counsel vigorously cross-examined each of the People's witnesses. For instance, he questioned Ana about her failure to report the assault to the police until after EO spoke with the counselor (T. 4/1/08 at 59), highlighted inconsistencies between her brother's testimony and the statement he made to the police (*id.* at 215-16), elicited testimony from Marino that EO's injuries were consistent with chronic constipation and that the injuries may have been absent during EO's first physical examination (T. 4/2/08 at 189), and challenged the accuracy of Marino's report (*id.* at 198). In the absence of a more specific explanation as to why counsel's performance was defective with respect to the other witnesses (*see* Pet. 7-8 (concentrating on inconsistencies in EO's testimony and stating only generally that petitioner's "attorney failed to properly cross-examine the People's witnesses")), the Court concludes that counsel's cross-examinations were not constitutionally defective, *see Dunham*, 313 F.3d at 732.

Under these circumstances, petitioner has not shown that his lawyer's questioning of EO fell below an objective standard of reasonableness. *See, e.g.*, *Wright v. United States*, No. 10-CV-5694 FB, 2014 WL 4924436, at *3 (E.D.N.Y. Oct. 2, 2014) (holdings counsel's performance was not deficient where he "vigorously cross-examined" the government's witnesses). Therefore, this ineffective assistance of counsel claim lacks merit.

6. Failure to Object to Marino's Testimony

Petitioner contends that trial counsel was ineffective for failing to object when Marino testified about particular statements EO made to her because those statements amounted to hearsay and impermissibly bolstered EO's testimony. (Pet. 8.) The Court disagrees. First, although it is true that Marino recounted some of the statements EO made about the incident (*see, e.g.*, T. 4/2/08 at 79-80), those statements were made for the purpose of medical diagnosis, which renders them admissible under New York law, *see People v. Thomas*, 282 A.D.2d 827, 828 (N.Y. App. Div. 2001) ("[A] treating physician may testify to the history obtained from the patient if it is germane to diagnosis and treatment." (quoting *Scott v. Mason*, 155 A.D.2d 655, 657, (App. Div. 1989))). Thus, a hearsay objection would not have succeeded, and counsel's failure to make one does not constitute deficient performance. *See Vargo v. United States*, No. 06-CV-4846(NGG), 2008 WL 2437861, at *8 (E.D.N.Y. June 13, 2008) ("Trial counsel cannot be faulted for failing to make an objection that would be unlikely to succeed.").

Second, none of Marino's statements impermissibly bolstered EO's testimony. Under New York law, "[w]here . . . the sole reason for questioning [an] expert witness is to bolster the testimony of another witness . . . by explaining that his version of the events is more believable than the defendant's, the expert's testimony is equivalent to an opinion

14

that the defendant is guilty, and the receipt of such testimony may not be condoned." *People v. Ciaccio*, 391 N.E.2d 1347, 1351 (N.Y. 1979). In *Ciaccio*, for example, the alleged victim testified that two men had forced their way into his truck and offered him $100 to lie about who committed the hijacking. *Id.* The victim later testified that one of the men also offered to buy him a meal while the other drove away with the truck. *Id.* The People called a police detective as an expert who testified that, in his experience of investigating similar robberies, "that it was not unusual for hijackers to offer to give the driver of the truck $100 for his co-operation in reporting to the police that two Blacks had done the robbery and that it is usual for hijackers to take their victim, while in 'custody', out to lunch." *Id.* The New York Court of Appeals held that the detective's testimony was improper because it "was the precise equivalent of affirming the credibility of the People's witness through the vehicle of an opinion that many hijackings occur as the victim had related." *Id.*

In *People v. Harris*, 249 A.D.2d 775, 776 (N.Y. App. Div. 1998), by contrast, the Appellate Division held that it was not improper bolstering for the People "to elicit an opinion from their physician witness as to whether the victim's injuries were consistent with forcible sexual intercourse" even though that testimony "provide[d] independent corroboration of the victim's claims." *See also People v. Smith*, 129 A.D. 1005, 1005 (App. Div. 1987) ("It was proper to allow the doctor to testify about his observations on physical examination of the child and, in response to a hypothetical question, to state that, based on his training and experience, in his opinion the child had been subjected to sexual contact in the vaginal and anal areas within the past few days."). Likewise, in *Bloomfield*, 2008 WL 2097423, at *34, the court held that it was not improper to introduce expert testimony that "refut[ed] innocent explanation for how [the alleged victim] incurred various injuries" because those explanations were "a crucial component of the prosecution's circumstantial case."

Here, like in *Harris* and *Bloomfield*, the expert's testimony was not offered solely to explain that EO's "version of the events is more believable than the defendant's," *Ciaccio*, 391 N.E.2d at 1351, but instead to provide facts that would allow the jury to properly evaluate EO's testimony, *see Harris*, 249 A.D.2d at 776; *Bloomfield*, 2008 WL 2097423, at *34. To the extent she recounted EO's statements, she did so without any specificity and only in the context of explaining physical evidence or the methods of her examination. (*See, e.g.*, T. 4/2/08 at 122, 128.) This does not constitute improper bolstering under New York law, *see Harris*, 249 A.D.2d at 776; *Smith*, 129 A.D. at 1005, and, therefore, does not provide a basis for an ineffective assistance of counsel claim, *see Vargo*, 2008 WL 2437861, at *8; *Bloomfield*, 2008 WL 2097423, at *34 ("A failure to raise an evidentiary objection cannot be ineffective assistance if the objection lacks merit.").[8]

---

[8] In any event, the Court concludes that, assuming the statements constituted impermissible bolstering, petitioner has not shown prejudice a result of them. Even without Marino's testimony recounting EO's allegations, the evidence of guilt—which, as noted above, included not just EO's testimony but also, *inter alia*, her brother's testimony that was consistent with her version, the physical evidence indicative of a sexual assault, and petitioner's pleas for forgiveness—was overwhelming. *See, e.g.*, *People v. Hudgins*, No. 07–CV–01862–(JFB), 2009 WL 1703266, at *6 (E.D.N.Y. June 18, 2009).

### 7. Prosecutorial Misconduct

Next, petitioner claims that he received ineffective assistance of counsel because his lawyer failed to object to prosecutorial misconduct that allegedly occurred when the prosecutor threatened defense witness Dr. Schwartz over the telephone due to the doctor's medical report. (Pet. 8.) Petitioner appears to be referring to a message the prosecutor left with Dr. Schwartz's sister in which the prosecutor insinuated that Schwartz might "blow the case" if she testified. (*See* T. 4/3/08 at 115-16 (Schwartz referring to the messages as "nasty" and "threatening").)

To resolve an ineffective assistance of counsel claim based on a failure to object to prosecutorial misconduct, courts "focus on the merits of the underlying prosecutorial-misconduct claims." *Wynters v. Poole*, 464 F. Supp. 2d 167, 177 (W.D.N.Y. 2006). To obtain habeas relief on the basis of prosecutorial misconduct, that misconduct "must have so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). A petitioner must show that he "suffered actual prejudice because the prosecutor's comments . . . had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley*, 41 F.3d at 824.

Here, even assuming the prosecutor's actions amounted to misconduct, petitioner has not made a showing of prejudice as required to prevail on a prosecutorial misconduct claim. Indeed, Dr. Schwartz's report, the document petitioner claims the prosecutor was attempting to repress, was admitted at trial (*see* T. 4/4/08 at 13-16), and Dr. Schwartz testified specifically that "there was no evidence, whatsoever . . . that there was any trauma, or sexual assault committed to [EO] based on her physical exam" (T. 4/3/08 at 111). She further testified that EO's demeanor was "not reliable" as it was inconsistent with a typical sexual assault victim. (*Id.* at 117.) Therefore, given that the prosecutor's alleged effort to discourage Dr. Schwartz from presenting this evidence did not succeed, petitioner has failed to demonstrate prejudice from it as required for habeas relief. *See Darden*, 477 U.S. at 181; *Bentley*, 41 F.3d at 824.

### IV. CONCLUSION

For these reasons, this Court concludes that petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2254. Accordingly, the petition for a writ of habeas corpus is denied in its entirety. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
Judge Joseph F. Bianco
United States District Judge

Date:   August 25, 2017
        Central Islip, NY

\* \* \*

Petitioner is proceeding *pro se*. Respondent is represented by Thomas J. Spota, District Attorney, Suffolk County District Attorney's Office, 200 Center Drive, Riverhead, NY 11901.